(No. 53134.—

## A. E. STALEY MANUFACTURING COMPANY, Appellee, v. SWIFT & COMPANY, Appellant.

*Opinion filed November 18, 1980.—Rehearing denied March 27, 1981.*

UNDERWOOD and MORAN, JJ., dissenting upon denial of rehearing.

Frederic S. Lane, Robert B. Millner, Marc C. Simon and Kirk R. Ruthenberg, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, and Robert D. Winters, of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Sacks, Montgomery, Pastore & Levine, of New York City (Stuart M. Levine and Nicholas J. Niers, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Macon County granting a motion to dismiss filed by defendant, Swift & Company, under section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c)). The appellate court reversed and remanded, one justice dissenting. (80 Ill. App. 3d 122.) We granted Swift leave to appeal.

Plaintiff, A. E. Staley Manufacturing Company, is a Delaware corporation with its principal office and place of business in Decatur, Macon County, Illinois. Defendant, Swift & Company, is also a Delaware corporation with its principal place of business in Chicago, and it conducts some business in Macon County.

On March 1, 1976, the parties entered into an agreement whereby Staley purchased from Swift, *inter alia*, a soybean-processing plant in Des Moines, Iowa. The plant was then under construction by Swift, and, under the

terms of the agreement, construction was to be completed by Swift.

On September 12, 1977, at 2:49 p.m., Swift filed suit against Staley in the Polk County district court in Des Moines. In that suit, presently in the discovery stage, Swift seeks recovery of $4.5 million retained by Staley to secure construction of the soybean-processing plant.

Shortly thereafter, on the same day as the filing of Swift's Iowa action, Staley filed suit against Swift in Illinois in the Macon County circuit court. Staley seeks $39.8 million in damages allegedly sustained as a result of Swift's failure to fulfill its obligation of completing construction of the soybean-processing plant.

In its Iowa action, Swift has also named French Oil Mill Machinery Company as a defendant. French allegedly made certain guarantees to Swift, and Swift seeks indemnification from French for much of Staley's claim against Swift. Swift claims that it is not aware of any basis for obtaining jurisdiction over French in the Illinois courts.

On October 3, 1977, Swift filed in the Illinois action a document captioned: "Motion To Dismiss For Forum Non Conveniens Or In The Alternative To Stay This Proceeding Pending Disposition Of A Prior Suit In Iowa Between The Parties Hereto Concerning The Same Contract Which Is The Subject Matter Of This Suit." In the body of the motion itself, Swift explains at some length that it filed its Iowa action prior to Staley's Illinois action, but it relies primarily on *forum non conveniens* as the basis of its motion. The circuit court denied the motion, finding that both parties have their principal offices in Illinois and that, under the terms of their agreement, Illinois law would govern interpretation of the agreement. The appellate court affirmed, citing the same factors as the circuit court, but also finding that most of the principals involved are Illinois residents, that most discoverable paper work is in Decatur or Chicago, and that the

economic impact of the litigation would be greater on Illinois. (65 Ill. App. 3d 427.) On March 29, 1979, this court denied a petition for leave to appeal filed by Swift. 74 Ill. 2d 585.

Prior to this court's denial of Swift's petition for leave to appeal, Swift filed its second motion to dismiss in the Macon County circuit court on January 11, 1979. Relying on section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c)), Swift claimed that it had filed its Iowa action prior to Staley's Illinois action and that dismissal of Staley's action was therefore required. Section 48(1)(c) provides:

> "Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:
>
> \*\*\*
>
> That there is another action pending between the same parties for the same cause."

The circuit court found that Swift had, in fact, filed its action in Iowa 41 to 71 minutes prior to Staley's filing of the Illinois action. Because of Swift's prior filing in Iowa, the circuit court felt that it was compelled to grant Swift's motion to dismiss, and it did so. On appeal by Staley, the appellate court reversed the judgment of the circuit court and remanded the cause to that court. (80 Ill. App. 3d 122.) Finding that section 48(1)(c) was adopted from a New York statute and ruling that judicial construction of the New York statute accompanied Illinois' adoption of section 48(1)(c) (*Hansen v. Raleigh* (1945), 391 Ill. 536, 549), the appellate court held that the respective filing times of the actions should be disregarded and that section 48(1)(c) is inoperative when both actions are filed on the same day, citing *Avery v. Title Guaranty & Trust Co.* (1930), 230 App. Div. 519, 245 N.Y.S. 362. The appellate court held that Swift's section 48(1)(c) motion is ad-

dressed to the discretion of the trial court and that Swift's prior filing of an action in Iowa did not mandate dismissal of Staley's Illinois action. The appellate court accordingly directed the circuit court to consider the motion as calling for the exercise of the court's discretion. 80 Ill. App. 3d 122, 126.

In its appeal to this court, Swift argues that section 48(1)(c) mandates dismissal of Staley's action and that the appellate court's decision fails to recognize the salutary purpose of that statute to avoid duplicative litigation. Swift points out that the New York decision in *Avery*, relied upon by the appellate court, is not a decision of that State's highest court and that this court has in the past refused to follow New York cases under section 48(1)(c). See *Skolnick v. Martin* (1964), 32 Ill. 2d 55, 57-60.

Our reading of *Skolnick* indicates that the court there refused to follow New York cases because it found them to be contrary to "the purpose and spirit of the Civil Practice Act" (32 Ill. 2d 55, 59), and it is a well-recognized rule of statutory construction that the interpretation placed upon a statute need not be followed by the courts of a State adopting that statute where such an interpretation is inconsistent with the policy of the adopting State (2A A. Sutherland, Statutes and Statutory Construction sec. 52.02, at 330 (4th ed. 1973)). There therefore existed a basis for the court's decision in *Skolnick* to refuse to follow New York cases.

As to the New York decision in *Avery*, relied upon by the appellate court here, we acknowledge that the decision is of an intermediate court and is not entitled to the same effect as a decision of the court of last resort in that State. (2A A. Sutherland, Statutes and Statutory Construction sec. 52.02, at 330 (4th ed. 1973).) We nonetheless find that adoption of the *Avery* rationale, for the reasons stated hereinafter, does not subvert Illinois policy of avoiding duplicative litigation, and we agree with the appellate

court that dismissal of Staley's action was not mandated by section 48(1)(c).

Before discussing in detail the merits of the issues presented, we wish to express our disapproval of the manner in which Swift has sought dismissal of Staley's action. First, we find it somewhat inconsistent for Swift to speak of the virtues of avoiding multiplicity of litigation and then to assert its bases for dismissal one at a time as it has done here. Such a piecemeal approach does little to streamline litigation. Second, Swift has sought dismissal under the doctrine of *forum non conveniens*, and later under section 48(1)(c), as if these were two mutually exclusive procedural devices. To the contrary, we perceive section 48(1)(c) and *forum non conveniens* as interrelated procedural devices which may and should be used together when another action is pending and defendant feels that one forum is inconvenient. We acknowledge that the pendency of another action, unlike availability of another forum (Restatement (Second) of Conflict of Laws sec. 84 (1971)), is not a prerequisite to a claim of *forum non conveniens* as it is under section 48(1)(c), and we acknowledge that the doctrine of *forum non conveniens* does not encompass all factors which may be relevant in seeking dismissal or other appropriate relief under section 48(1)(c). Section 48(1)(c) and *forum non conveniens* should, nonetheless, be used together where, as here, there is another action pending and defendant believes that one forum is inconvenient. Third, we question Swift's filing of its motion under section 48(1)(c) during the pendency of its prior appeal from the circuit court's *forum non conveniens* ruling, since the circuit court was without jurisdiction to entertain the second motion at that time. (*City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472.) We nonetheless choose to address the merits of the issues raised, since we consider this to be a proper case for the exercise of our supervisory authority (Ill. Const. 1970,

art. VI, sec. 16). A Civil Practice Act question of considerable importance to the bar and the courts is presented, this is the second interlocutory appeal in this cause, and no hearing on the merits has yet been held. (*Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 67-68.) Judicial economy and common sense dictate a final disposition of the matters here raised, and a dismissal of the appeal by this court could result in further litigation under section 48(1)(c). We therefore proceed to the merits.

As set forth more fully above, section 48(1)(c) provides that a motion for dismissal "or for other appropriate relief" may be made where "there is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c).) The reference in section 48(1)(c) to "other appropriate relief" makes it obvious that dismissal is not mandated or the only form of relief afforded by that statute, as the circuit court seemingly presumed. Second, no mention is made in section 48(1)(c) of the respective filing times of the actions, and it is therefore apparent that the statute does not attribute any significance to that factor. On this point we agree with the analysis of the appellate court in *Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 822-25. That one action is filed prior to the other therefore would not be determinative.

The purpose of section 48(1)(c) is to avoid duplicative litigation (*People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 255; *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 290), and the trial court's analysis should be geared toward effectuating that purpose. Notwithstanding this policy, however, we do not believe that the legislature intended that the filing of a section 48(1)(c) motion should result in automatic dismissal or that two separate actions concerning the same subject matter could never proceed simultaneously. The

more reasonable construction is that the circuit court possesses some degree of discretion in ruling upon the motion and that multiple actions in different jurisdictions, but arising out of the same operative facts, may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed (Restatement (Second) of Conflict of Laws sec. 86 (1971)). The circuit court here felt that it had no discretion in this matter and therefore failed to conduct an appropriate analysis of the situation. With the benefit of the parties' briefs and argument on the questions presented, we have nonetheless considered carefully the questions raised, and in the exercise of this court's power to enter any relief that the trial court may have afforded (73 Ill. 2d R. 366(a)(5)), we hold that Staley's action in the Illinois courts is not barred by section 48(1)(c). In successfully defending Swift's prior motion to dismiss on the basis of *forum non conveniens,* Staley has demonstrated that this litigation has a legitimate and substantial relation to Illinois, and Swift has presented no additional grounds from which we could conclude that Staley's action cannot be maintained in the courts of this State.

Also of importance to us in our analysis is that dismissal of Staley's action would force it to seek the relief it desires by way of counterclaim in Swift's Iowa action. It is not clear that such a course is required under Iowa procedural rules (see Iowa R. Civ. P. 29 (counterclaim need not be pleaded where the relief which would be sought is the subject of an action pending elsewhere), yet a ruling here against Staley would create such a rule *de facto* and would allow Swift to bootstrap Staley's breach-of-contract action into the Iowa courts through the filing of its action for recovery of amounts retained by Staley and for indemnity against a third-party guarantor. We do not believe that the policy of avoiding duplicative litigation requires this result. Swift may, if it chooses, assert its claim

for recovery of amounts retained by Staley in the Illinois courts, and if it does not successfully defend Staley's breach-of-contract action, it may seek indemnity from the third-party guarantor in Iowa or any appropriate forum. Significantly, resolution of Staley's breach-of-contract action could moot or facilitate resolution of the questions of Swift's right to indemnity and its right to recovery of amounts retained by Staley.

The propriety of staying the Illinois action has also been discussed by the parties, but we feel that a stay would also be inappropriate. A stay would, again, require Staley to seek its relief by way of counterclaim in the Iowa action, or, alternatively, to await the expiration or termination of the stay before proceeding upon its complaint in Illinois. We have already expressed our belief that the first of these alternatives is inadequate, and we find that the latter course is likewise unacceptable. We do not believe that a resident corporation's right to its day in court should await resolution of sister-State litigation where, as here, plaintiff's filing of its complaint does not evidence an intent to harass or gain undue influence over defendant and where, as here, the possibility of completely resolving this controversy in Illinois is greater (Annot., 19 A.L.R.2d 301, 309-12, 317 (1951) (factors in deciding whether to stay a later filed action are comity; prevention of multiplicity, vexation and harassment; likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum)). As the appellate court capably noted in the *Continental Grain* case, the legislature did not intend "that the statute should be made so dependent on either the possible actions of a defendant or the laws of some other jurisdiction." *Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 824.

Prior cases of this court relied upon by Swift do not require a different application of section 48(1)(c) to the

facts here. *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, and *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, involved the pendency of two actions in different counties in Illinois, and the court's concern in those cases was for the orderly administration of justice within the 'same jurisdiction, Illinois. Such a matter is one over which the court understandably could and should exercise greater control and guidance, as opposed to a situation such as that presented here, in which a legitimate and substantial relationship of this litigation to Illinois has been demonstrated and in which the other action pending is in the courts of a sister State, over which this court has no say. In *Lehman,* for example, it is said that the "orderly administration of justice does not permit one court *of this state* to ignore *** another court *of this state."* (Emphasis added.) (34 Ill. 2d 286, 292.) A fair reading of *Gitchoff* indicates that the court's concern was similarly limited to intrastate conflicts between courts. It is there said:

"We need not here resolve the opposing arguments of the parties on the question whether the Madison counterclaim and the Macon action were 'pending in the same court' so as to authorize their consolidation by the Macon County judge pursuant to section 51 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 51). It is entirely clear that the pendency before different judges of separate suits involving identical parties and issues is incompatible with the orderly and efficient administration of justice. It is equally clear that irrespective of the propriety of the Macon County order consolidating the proceedings, the refusal of the Madison County court to abide by that order was improper. One circuit judge may not review or disregard the orders of another circuit judge in the judicial system of this State (*People ex rel. Kelly,*

*Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229), and such action can only serve to diminish respect for and public confidence in our judiciary ([*People ex rel.*] *East Side Levee* [*& Sanitary District v. Madison County Levee & Sanitary District* (1973)], 54 Ill. 2d 442, 445).

Section 16 of article VI of the 1970 Constitution vests 'General administrative and supervisory authority over all courts' of this State in this court. In the exercise of that authority we have heretofore ordered the correction of patently erroneous action by trial judges. *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* [(1974)], 61 Ill. 2d 229; *People ex rel. Bowman v. Woodward* [(1974)], 61 Ill. 2d 231." (*People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 257.)

Read in context, it is readily apparent that the court's reference to "the pendency before different judges of separate suits" was an expression of concern over the workings of the judicial system within Illinois.

*Skolnick v. Martin* (1964), 32 Ill. 2d 55, also relied upon by Swift, is likewise not in point, since that case involved the filing of the same cause of action by the same plaintiff in Federal and Illinois courts. The court's references to a "right" of dismissal and to "repetitious and burdensome" litigation in the courts of other jurisdictions (32 Ill. 2d 55, 59-60) therefore do not carry the same meaning here where there is no element of vexation apparent from the multiple filing and prosecution of the same action by the same party.

In summary, we hold that section 48(1)(c) does not bar Staley's action in the Illinois courts. The judgment of the appellate court is affirmed insofar as it held that section 48(1)(c) does not bar Staley's action, and its judgment is reversed insofar as it remanded the cause to the

circuit court for further proceedings. The judgment of
the circuit court is reversed.

*Appellate court affirmed in*
*part and reversed in part;*
*circuit court reversed.*

Dissenting Opinion Upon Denial of Rehearing

MR. JUSTICE UNDERWOOD, dissenting:

With some misgivings I had originally joined in the
court's opinion. The undenied representations now made
in the petition for rehearing and responsive documents
have, however, persuaded me that the court has erred in
this unusual situation by permitting the Illinois proceed-
ings to continue. I agree with the holding that filing of the
Iowa complaint approximately one hour prior to the filing
of the Illinois complant does not *ipso facto* require dis-
missal of the latter. That is not to say, however, that the
priority in filing is totally irrelevant in evaluating the
*forum non conveniens* posture of the Illinois litigation. I
agree, too, that Swift's action in asserting *seriatim* its bases
for dismissal does not bespeak a serious effort to expedite
the ultimate resolution of this case. Unfortunately, those
observations do little to assist in solving the problem which
arose when this court held the circuit court erred in
believing itself without discretion to deny Swift's section
48(1)(c) motion, and then, rather than remanding to that
court for further hearings, proceeded to hold that the
Illinois action could be maintained. As a consequence of
deciding the matter here without remandment, no new
evidence was taken as to current developments. Thus,
this court's original opinion was predicated upon a record
reflecting the status of the litigation in 1977 when Swift's
original *forum non conveniens* motion to dismiss had been
denied. No additional evidence had been admitted at the

trial court hearing on Swift's later section 48(1)(c) motion, since the trial court felt the priority of the filing of the Iowa action compelled dismissal of Staley's Illinois complaint.

We are now, for the first time, informed by the petition for rehearing and response thereto of substantial changes which have occurred in the status of the Iowa proceedings since the dismissal of the Illinois litigation by the Macon County circuit court from which this appeal was taken. This court's opinion relied to a significant extent upon Staley's original argument that an Illinois resident corporation should not be compelled to seek the relief it desired by way of a counterclaim in the Iowa action initiated by Swift. We are now informed that, some 6 days following the oral argument of this case before us, Staley filed in the Iowa litigation a counterclaim presenting virtually the identical claims made in its Illinois complaint; in addition, that counterclaim contains a second count, not present in the Illinois complaint, alleging a breach of contract claim in connection with Swift's sale of an Indiana soybean-processing plant to Staley under the same agreement governing sale of the Des Moines plant. As a result of the filing by Staley of its Iowa counterclaim, Swift has now filed in the Iowa proceedings indemnity actions against certain corporate contractors who are allegedly liable to Swift for the plant defects complained of by Staley in its counterclaim against Swift. Two of the defendants in the indemnity actions are Ohio corporations over which there is apparently no basis for acquiring jurisdiction in Illinois. Iowa law permits a simultaneous trial of Swift's complaint, Staley's counterclaim and the indemnity actions.

Also relevant for consideration is the fact that on June 12, 1980, Staley's motion to dismiss the Iowa proceedings on *forum non conveniens* grounds was denied by the Iowa district court in an order which stated in part:

"[T]his is an Iowa-based construction case in which the

bulk of witnesses, documents, and the structures (comprising a soybean processing plant) are located in the Des Moines area."

The court further found:

"Although Staley asserts that some of its high-level executives are located in Decatur, Illinois, the key Staley operating and engineering personnel with responsibility for the operation of the Des Moines plant are located in Iowa (*e.g.,* H. S. Chittick, Staley's former plant superintendent, Mr. R. Rypkema, Staley's former plant manager, Mr. E. D. McConnell, Staley's general foreman, Mr. R. L. Bucklin and Mr. L. A. Williams, Jr., Staley's general operating foremen). Moreover, the contractor primarily responsible for construction of the plant, A. N. Neumann & Brothers, Inc., is incorporated in Iowa and located in Des Moines; Neumann's personnel reside in Iowa; almost all of the subcontractors who worked on the construction of the plant are incorporated and located in Iowa; and almost all of their personnel reside in Iowa. ·All of these witnesses have critical, firsthand knowledge of the construction and operation of the plant.

Also significant is the fact that Staley's documents are kept at the Des Moines plant. Tens of thousands of documents have already been produced in this case at the Des Moines plant."

Additionally, it is represented by Swift and not denied by Staley that, since the date of oral argument before us, Staley has produced at the Des Moines plant more than half a million documents in response to discovery requests, and that these documents reveal that some 20 Staley supervisory personnel conducted an investigation of operations at the soybean-processing plant in Des Moines in early 1979 and will be important witnesses at trial. These witnesses, it is said, are all located in Des Moines. The Iowa court's denial of Staley's motion to dismiss on *forum non conveniens* grounds was obviously based on a consideration of far more nearly current facts than was this court's opinion.

Of course this court can ignore these new developments and our earlier holdings and insist that an Illinois

resident corporation is entitled to assert its rights in the courts of our State regardless of the extraordinary inconvenience, cost and inefficiency involved in doing so. But, to me, that course smacks of provincialism. Pursuing that avenue will result in simultaneous litigation in the district court of Iowa and the circuit court of Illinois of what is essentially the same cause of action. Substantial duplication of discovery, depositions, lawyers' fees, costs and testimony will occur. In all likelihood it will be necessary that Illinois witnesses travel to Iowa and Iowa witnesses to Illinois. The added expense and inconvenience to the parties will obviously be substantial. But, of at least equal importance is the impact of these proceedings upon our judicial system. This is highly complex multiparty litigation involving many millions of dollars. Its resolution will require large amounts of lawyer, witness and judicial time and effort. To unnecessarily duplicate that burden and impose it upon both the Iowa and Illinois judicial systems is, in my judgment, both unnecessary and undesirable. This is particularly so when it is remembered that there is included in the Iowa proceedings the indemnity actions against the Ohio contractors, jurisdiction over whom cannot even be obtained in Illinois. It is apparent that only in the Iowa court can all of the claims be completely resolved.

The majority dismisses this court's earlier decision in *Skolnick v. Martin* (1964), 32 Ill. 2d 55, as not in point because the litigation there had been filed in both Federal and State courts by the same plaintiff and therefore involved an element of vexation not present here. *Skolnick,* however, did not speak in terms of "vexation." After first indicating it was sufficient to come within section 48(1)(c) that both suits arose from the same "cause" rather than involving the same "cause of action" this court went on to state:

 "The statute here authorizes dismissal where

another action is pending without distinguishing between actions depending in another jurisdiction. Had it been intended to restrict the authority to dismiss to situations where the other cause of action was pending in our own jurisdiction, it would have been a simple matter to do so. Furthermore, the Civil Practice Act was designed to eliminate the formalized rules of common-law pleading and to provide a procedure whereby substantive rights could be determined with a minimum of delay, technicality and expense. (*Scott v. Freeport Motor Casualty Co.* 392 Ill. 332.) Indeed, it is the express direction of section 4 that the act shall be liberally construed to the end that controversies may be speedily and finally determined. (Ill. Rev. Stat. 1961, chap. 110, par. 4.) Certainly the elimination of repetitious suits and the relief of courts and litigants alike from the unnecessary burden of trying the ˌsame issues pending in another action are consistent with the purpose and spirit of the Civil Practice Act, and it can hardly be said that actions for the same cause filed in the Federal courts *or those of our sister States* are less repetitious or burdensome than those filed within our own jurisdiction." (Emphasis added.) (32 Ill. 2d 55, 59-60.)

In my judgment the theme of *Skolnick* is difficult to reconcile with the result in this case.

This court's concern for the efficient and orderly administration of justice and fairness to the litigants has been expressed in numerous other instances. (*Horn v. Rincker* (1981), 84 Ill. 2d 139; *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511; *People ex rel. Phillips Petroleum v. Gitchoff* (1976), 65 Ill. 2d 249; *People ex rel. Lehman v. Lehman*

(1966), 34 Ill. 2d 286.) If dismissal under section 48(1)(c) is to be a discretionary matter governed largely by *forum non conveniens* considerations, a sound exercise of that discretion would dictate a stay or dismissal of the Illinois litigation.

Reassessing the validity of our original opinion in light of the apparently changed circumstances which were not previously known persuades me that the circuit court's dismissal of the Illinois action should be sustained. At the very least it would seem to me our opinion should be vacated and the cause remanded for a hearing at which evidence of these changed circumstances could be presented. If that evidence established that the present circumstances are as represented in the pleadings pertaining to rehearing, the Illinois litigation should be dismissed.

MR. JUSTICE MORAN, joins in this dissent.