# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

*Friends for Murray Center Inc. v. Department of Human Services*,
2014 IL App (5th) 130481

</div>

| | |
|---|---|
| Appellate Court Caption | FRIENDS FOR MURRAY CENTER INCORPORATED, JAN MONKEN, MARY JANE HARDY, STEPHANIE WAGGONER, EMILY SMITH, MONICA SOBCZAK, and CHRISTIE CRISTOLA, Petitioners-Appellees, v. THE DEPARTMENT OF HUMAN SERVICES; KEVIN CASEY, in His Official Capacity as Director of the Division of Developmental Disabilities of the Department of Human Services; MICHELLE SADDLER, in Her Official Capacity as Secretary of Human Services; ILLINOIS OFFICE OF STATE GUARDIAN; FREDA OMER, in Her Official Capacity as Guardian for the Illinois Office of State Guardian; WARREN G. MURRAY DEVELOPMENTAL CENTER; JAMIE VEACH, in His Official Capacity as Director of Murray Center; and RICHARD STARR, in His Official Capacity as Assistant Director of Murray Center, Respondents-Appellants (Community Resource Alliance, LLC, a Missouri Limited Liability Corporation, Respondent). |
| District & No. | Fifth District Docket No. 5-13-0481 |
| Filed | April 15, 2014 |

| | |
|---|---|
| **Held** | In an action arising from a decision of the State of Illinois to close a facility housing developmentally disabled adults and transfer those persons to community-integrated living arrangements, the appellate court held that petitioners met the criteria of being an "interested person" for purposes of section 23-2 of the Probate Act and had standing to bring their action, and neither the fact that all of the wards involved in petitioners' challenge were subjects of other pending probate proceedings, nor the respondents' claim that the powers of the temporary guardian *ad litem* appointed by the trial court, including the power to give a final consent to the transfer of any wards at issue, exceeded the permissible scope of a guardian *ad litem*'s duties required that the preliminary injunction against implementation of the decision had to be dissolved. |
| (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | |

| | |
|---|---|
| **Decision Under Review** | Appeal from the Circuit Court of Clinton County, No. 13-CH-49; the Hon. William J. Becker, Judge, presiding. |

| | |
|---|---|
| **Judgment** | Affirmed. |

| | |
|---|---|
| **Counsel on Appeal** | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellants. |
| | W. Wylie Blair, of Onder, Shelton, O'Leary & Peterson, LLC, of St. Louis, Missouri, for appellees. |
| | Melissa O. Picciola, Beth A. Miller, Karen I. Ward, and Deborah M. Kennedy, all of Equip for Equality, Inc., of Chicago, *amicus curiae*. |

| | |
|---|---|
| **Panel** | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.<br>Justice Spomer concurred in the judgment and opinion.<br>Justice Cates specially concurred, with opinion. |

# OPINION

¶ 1      Petitioners, Friends for Murray Center Incorporated, Jan Monken, Mary Jane Hardy, Stephanie Waggoner, Emily Smith, Monica Sobczak, and Christie Cristola filed this action to enjoin respondents, Illinois Department of Human Services, Kevin Casey, in his official capacity as Director of the Division of Developmental Disabilities of the Illinois Department of Human Services (Department), Michelle Saddler, in her official capacity as Secretary of Human Services, Illinois Office of State Guardian (OSG), Freda Omer, in her official capacity as Guardian for the OSG, Warren G. Murray Developmental Center (Murray or Murray Center), Jamie Veach, in his official capacity as director of Murray Center, and Richard Starr, in his official capacity as assistant director of Murray Center, and Community Resource Associates, Inc., from transferring OSG wards residing at the Murray Center to community-integrated living arrangements (CILAs). After a hearing, the circuit court of Clinton County appointed Stewart Freeman temporary guardian *ad litem* of the 24 OSG wards who are residents of Murray and entered a preliminary injunction prohibiting respondents from "transferring any disabled adult who is a resident of [Murray] and under the guardianship of the [OSG] from [Murray] without consent of the temporary guardian *ad litem* Stuart [*sic*] Freeman until further order of this court." Respondents, except for Community Resource Alliance, LLC, which failed to appear below, now appeal from the circuit court's order. The issues raised on appeal are: (1) whether petitioners have standing to bring this action, (2) whether the preliminary injunction should be dissolved where all of the OSG wards are the subjects of pending probate proceedings, and (3) whether the preliminary injunction should be dissolved on the basis that the guardian *ad litem*'s powers exceed the permissible scope of a guardian *ad litem*'s duties.

¶ 2      Equip for Equality, Inc., a private nonprofit organization which provides services to individuals with a disability, filed an *amicus curiae* brief in support of respondents. Petitioners filed a motion to dismiss the appeal and a motion to strike the *amicus* brief. Both motions are denied. For the following reasons, we affirm the order of the circuit court of Clinton County.

## BACKGROUND

¶ 3

¶ 4      The instant litigation is the result of the State's plan to close Murray, which houses developmentally disabled individuals. As of December 31, 2012, there were 261 residents living at Murray, which is located in Centralia. The Department contracted with Community Resource Associates to transition developmentally disabled adults living at Murray to CILAs. A related action, Illinois League of Advocates for the Developmentally Disabled v. Quinn, is pending in the United States District Court for the Northern District of Illinois, Eastern Division, case No. 13-C-1300. The petitioners in that case are challenging the State's plan to close Murray and have been granted an interlocutory injunction preventing closure of Murray and the transfer of its residents to other locations if those residents have not consented to such transfer. The federal court concluded it did not have jurisdiction, however, to prevent transfer of wards of the State who are under the guardianship of the OSG and whom the State Guardian consented to transfer, finding that "ignoring or overriding the [State Guardian's] decision regarding the residential placement of its wards would be impermissible interference with the State's authority." The federal injunction remains in place.

¶ 5    On July 29, 2013, petitioners filed the original petition with regard to the 24 residents of Murray who are OSG wards. Petitioners include Jan Monken, a volunteer at Murray since the 1960s, Mary Jane Hardy, a guardian for a Murray resident for 20 years, Stephanie Waggoner, a foster care volunteer, Emily Smith, a qualified intellectual disabilities professional, and Monica Sobczak, a member of the Murray Parents Association. None of the petitioners are related to the 24 residents in question. Ten of the twenty-four still reside at Murray, while the remainder have been discharged and moved to different facilities, but are still listed in transition status. Fourteen different counties made initial adjudication of disability for these twenty-four wards, and the guardianship estates for the OSG wards are currently pending in thirteen different counties.

¶ 6    The circuit court granted a temporary restraining order and directed petitioners to supplement the record by identifying the residents of Murray subject to the court order. The circuit court considered whether petitioners should be required to proceed in each county with pending probate actions involving OSG wards, but determined that such action would be inefficient and could lead to inconsistent results. Based upon the conclusion that the threat of harm to Murray residents outweighed the potential harm to respondents, the circuit court appointed Stewart Freeman as guardian *ad litem* for Murray residents under the guardianship of the OSG and enjoined the State from transferring any OSG ward who is a resident of Murray without the consent of Freeman. Freeman is the Clinton County public defender, but his appointment as guardian *ad litem* is separate from his public defender position.

¶ 7    On August 7, 2013, petitioners filed a three-count amended petition. Count I sought appointment of a guardian *ad litem* for the 24 OSG wards; count II sought issuance of an emergency temporary restraining order and a preliminary and permanent injunction against respondents; count III sought a writ of *mandamus*. The amended petition also added an additional petitioner, Christie Cristola, a licensed chaplain and an employee, volunteer, or advisor at Murray since 1970.

¶ 8    According to the amended petition, while the federal suit was pending, the federal defendants "drastically accelerated the closure process of Murray" and began transferring residents to CILAs. Petitioners claim numerous egregious actions on the part of respondents, including that respondents are acting impermissibly by ignoring warnings about potentially substandard housing conditions in the CILAs, ignoring warnings about placing certain individuals together in CILAs, ignoring standard Murray procedures for transferring individuals, and "freezing [Murray] professional staff out of the transfer process." Petitioners allege that some of the transfers of OSG wards would have resulted in "dangerous pairings" and that respondents are not inspecting CILAs prior to transferring Murray residents. Petitioners claim the State Guardian "has not participated in any meaningful way during transition meetings, and has never taken a position that a resident placement was improper."

¶ 9    Petitioners further allege that the State Guardian has consented to transfer his wards "despite being present at meetings where frightening concerns were raised." Concerns include placement of a ward in a wheelchair with a violent CILA resident, placement of a ward with elopement issues in a CILA located next to a busy road, and placement of a ward in a CILA "with suspected water damage." The petition further alleges that a "member of the Centralia community living next to a CILA where OSG Wards have been transferred witnessed dereliction of duties by those charged with caring for the OSG Wards, seen substandard housing conditions, and continuous transfer of residents in and out of the CILA." Petitioners

allege a host of additional egregious allegations and submitted affidavits in support of its allegations. For purposes of this appeal, we need not repeat all of the allegations raised in the petition.

¶ 10 Respondents moved to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)) and explained that a motion to dismiss against the initial petition was adopted as a motion to dismiss against the amended petition. Respondents argued the action was barred by sovereign immunity because petitioners wanted to control the discretionary actions of the State, that petitioners lacked standing to seek to modify the terms of the guardianship or remove the State Guardian, and that there was no statutory basis for permitting the circuit court of Clinton County to interfere with the decisions of other circuit courts entered in the probate proceedings concerning OSG wards residing at Murray. Respondents also moved to vacate the temporary restraining order, arguing *inter alia* that injunctive relief impedes the State's efforts to establish a system less reliant on institutional care and more focused on community-based placements.

¶ 11 Petitioners responded to the motions to dismiss, asserting that they were not seeking to "preclude closure of Murray," but were seeking to prevent respondents from acting in excess of their authority and to compel them to comply with sections 11a-20 and 23-2 of the Probate Act of 1975 (Act) (755 ILCS 5/11a-20, 23-2 (West 2010)) and that venue was proper under section 11a-7 of the Act (755 ILCS 5/11a-7 (West 2010)). After hearing arguments, the circuit court denied the motion to dismiss counts I and II, but granted the motion to dismiss count III. The circuit court granted a preliminary injunction that appointed Stewart Freeman as the temporary guardian *ad litem* over OSG wards who are residents of Murray and prohibited respondents from transferring any of the State Guardian's wards from Murray "without consent of the temporary guardian *ad litem*." The OSG retains all responsibilities for OSG wards other than residential placement decisions. Respondents now appeal.

¶ 12 ANALYSIS
¶ 13 I. STANDING
¶ 14 The first issue raised in this appeal is whether petitioners have standing to bring this action. Respondents contend petitioners lack standing to challenge the decisions made by the OSG regarding the proper placement of its wards under statutory standing requirements of the Act, as well as general standing principles. Respondents insist petitioners are not "interested persons" within the meaning of the Act and, therefore, they cannot petition the court to remove the State Guardian. We disagree.

¶ 15 In Illinois, a plaintiff need not allege facts to establish standing; it is defendant's burden to prove lack of standing. *In re Estate of Schlenker*, 209 Ill. 2d 456, 461, 808 N.E.2d 995, 998 (2004). Where, as here, standing is challenged in a motion to dismiss under section 2-619, a court is required to accept as true all well-pleaded facts in the complaint and all inferences that can reasonably be drawn in the plaintiff's favor, and the motion should only be granted if the plaintiff can prove no set of facts that would support a cause of action. *In re Estate of Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998. We review the issue of standing *de novo*. *In re Estate of Schlenker*, 209 Ill. 2d at 461, 808 N.E.2d at 998.

¶ 16 Section 23-2 of the Act provides for removal of a representative as follows:

"§ 23-2. Removal.

(a) On petition of any interested person or on the court's own motion, the court may remove a representative if:

* * *

(9) the representative becomes incapable of or unsuitable for the discharge of the representative's duties; or

(10) there is other good cause." 755 ILCS 5/23-2(a)(9), (10) (West 2010).

¶ 17    Section 1-2.15 of the Act provides that a representative includes a guardian. 755 ILCS 5/1-2.15 (West 2010).

¶ 18    An "interested person" is defined under the Act in pertinent part as follows:

"§ 1-2.11. 'Interested person' in relation to any particular action, power or proceeding under this Act means one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, *including without limitation* an heir, legatee, creditor, person entitled to a spouse's or child's award and the representative." (Emphasis added.) 755 ILCS 5/1-2.11 (West 2010).

¶ 19    Respondents insist that this definition is narrow, and petitioners do not meet the criteria necessary to be an "interested person" because they do not have or represent any financial interest, property right, or fiduciary status in the OSG wards. However, we agree with petitioners that a more expansive definition was contemplated by our General Assembly and that the list of potentially interested individuals or groups listed in section 1-2.11 is not exhaustive as evidenced by the use of the word "including."

¶ 20    The primary rule of statutory construction is to give effect to the legislature's intent. *In re Marriage of Murphy*, 203 Ill. 2d 212, 219, 786 N.E.2d 132, 136 (2003). The best indication of such intent is the statute's language, which must be given its plain and ordinary meaning. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 136, 908 N.E.2d 39, 44 (2009). Where a statute's language is clear and unambiguous, it is unnecessary to resort to other rules of interpretation. *Sangamon County Sheriff's Department*, 233 Ill. 2d at 136, 908 N.E.2d at 44. If a statute is ambiguous, however, we may consider extrinsic aids of construction to determine our legislature's intent. *Young America's Foundation v. Doris A. Pistole Revocable Living Trust*, 2013 IL App (2d) 121122, ¶ 25, 998 N.E.2d 94. A statute is ambiguous when reasonably well-informed people could interpret the statute in different ways. *Sangamon County Sheriff's Department*, 233 Ill. 2d at 136, 908 N.E.2d at 44.

¶ 21    In *In re Estate of Schlenker*, Justice Garman pointed out in a special concurrence that an ambiguity exists in section 1-2.11 of the Act:

"First, the majority's reading renders the first part of the definition–'one who has or represents a financial interest, property right, or fiduciary status *** which may be affected'–completely superfluous when heirs, legatees or creditors are at issue. In other words, the majority believes the definition means that an heir is an 'interested person' regardless of whether there is any effect on her interests. Surely, an 'interested person' should actually have an affected interest. If the legislature really intended to say that heirs are interested persons as a matter of law, it would have said an interested person is an heir, legatee, creditor *or* a person who has or represents a financial interest which may be affected. The legislature did not utilize that definition. A more rational reading of what the legislature said is that heirs, legatees and the others are *examples* of those

who will typically have an interest affected by a probate proceeding. Since the language can be read in at least two different ways, the definition of 'interested person' is ambiguous." (Emphases in original.) *In re Estate of Schlenker*, 209 Ill. 2d at 467, 808 N.E.2d at 1001-02 (Garman, J., specially concurring).

¶ 22 We also point out that the word "including" generally does not connote exclusivity, but is ordinarily interpreted as a term of enlargement. *Greyhound Lines, Inc. v. City of Chicago*, 24 Ill. App. 3d 718, 727, 321 N.E.2d 293, 302 (1974).

¶ 23 Furthermore, we find that respondents' argument is flawed because it fails to consider that OSG wards by their very nature have no parent, spouse, or relative willing or able to serve as their guardian. Petitioners' exhibit A, "Illinois Guardianship & Advocacy Commission A Guide to Adult Guardianship in Illinois," specifically states that the OSG "serves as guardian of last resort for individuals with disabilities when no other person is available to serve. Most of its wards are indigent or have limited assets." While respondents portray petitioners as individuals airing a "generalized grievance common to all members of the public," it is clear that petitioners are much more than that. Petitioners have all dedicated their lives to serving people with developmental disabilities and have been involved with Murray for many years.

¶ 24 Respondents cite no authority for the proposition that those seeking to become guardians of the OSG wards are not "interested parties" other than the language of the statute; however, as we have pointed out, the language of section 1-2.11 of the Act is ambiguous. Surely, our General Assembly intended that concerned individuals such as petitioners could step in to protect an OSG ward. Under the circumstances presented here, we believe petitioners meet the criteria of an "interested person" within the meaning of the Act and have standing to bring this action.

¶ 25 **II. EFFECT OF PENDING PROBATE PROCEEDINGS**

¶ 26 The second issue raised in this appeal is whether the preliminary injunction should be dissolved where all of the OSG wards are the subject of pending probate proceedings. Respondents contend the circuit court lacked authority to effectively replace the guardian appointed in probate proceedings pending in numerous other counties throughout the state. Respondents insist that the court holding the hearing on the initial petition for guardianship retains jurisdiction over the disabled adult, and, thus, the circuit court here lacked authority to enter any order limiting the power of the guardian who was duly appointed in previous proceedings. Petitioners point out that this issue does not even pertain to 8 of the 24 OSG wards because their guardianship proceedings were initiated in Clinton County, and, therefore, the circuit court of Clinton County clearly has jurisdiction. As to the remaining OSG wards who have ongoing guardianship proceedings in counties other than Clinton, petitioners contend that Clinton County has concurrent jurisdiction. We agree with petitioners.

¶ 27 Section 2-619(a)(3) of the Code provides that a defendant may move for dismissal if another action is pending involving the same parties and the same cause of action. 735 ILCS 5/2-619(a)(3) (West 2010). The purpose of section 2-619(a)(3) is to avoid duplicative litigation, and the decision to grant or deny such a motion is discretionary and will not be reversed unless there is an abuse of discretion. *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 495, 739 N.E.2d 639, 646-47 (2000). However, even when the threshold requirements of "same parties" and "same cause" are met, section 2-619(a)(3) relief is not mandatory. *A.E. Staley Manufacturing Co. v. Swift & Co.*, 84 Ill. 2d 245, 252, 419 N.E.2d 23,

27 (1980). Our supreme court has said "that multiple actions in different jurisdictions, but arising out of the same operative facts, may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed." *A.E. Staley Manufacturing Co.*, 84 Ill. 2d at 253, 419 N.E.2d at 27.

¶ 28    In the instant case, petitioners were not parties to the prior probate actions in which the OSG was named guardian over the disabled adults. Therefore, the same party requirement was not met. Moreover, as petitioners pointed out, Clinton County retained jurisdiction in eight cases by virtue of the fact that the guardianship proceedings were initiated in Clinton County. As to the remaining OSG wards, the circuit court considered whether it should require petitioners to proceed in each county with a pending probate action involving an OSG ward and determined that to require petitioners to do so "would be inefficient and could lead to inconsistent results." There were pending probate actions in 12 different counties, including Cook, Livingston, Sangamon, and Kankakee.

¶ 29    The circuit court here specifically asked, "How does the issue get back before the Cook County court or the Sangamon County court for a ward that was made a ward of the court in the Sangamon or Cook County proceedings, how does it get back there?" Respondents' attorney replied that a petition would have to be filed in the probate division of each county. The circuit court explained the problem with that approach as follows:

> "THE COURT: The problem I have with your argument Ms. Barnes–and I will say this, I dealt with–I see Mr. West. I've dealt with the [OSG] here. He's been a big help to me a lot of times. I don't have any real issue with the [OSG]. I've called him up on occasions to actually seek his guidance and what to do in problem situations.
>
> But for today's hearing, it seems like that the [OSG] is saying that we're making this decision and that it can't be reviewed. And that's the thing that I have the most difficulty with especially when the guardianship statute says that I, at least as I interpret it, the Court on its own motion can appoint a guardian for somebody.
>
> ***
>
> And what I'm looking at is I have a significant number of people here saying that the [OSG] is not doing its job. That the [OSG] is saying we're doing the best we can. [Murray] is going [to] be closed, we're doing the best we can. All these other people say no, the [OSG] is not doing what it can. There may be political reasons on both sides of the equation. But as I sit here, if I'm suppose[d] to be the Court, the protector of the wards, when I make them a ward of the state, they're under my supervision at least that's my understanding of how it works. I'm suppose[d] to get reports and make sure that the guardian is doing what the guardian is suppose[d] to do. I'm suppose[d] to make sure that the guardian of the state doesn't spend the money improperly, that they're taken care of. Now I have to appoint somebody else.
>
> What I seem to be hearing from your side of this dispute is well, Judge, we are doing what we can, but other people are saying you're not. How do I know–how does the ward get into court if–if people off the street can't bring them in–bring them into court if I can't tell you to come into court. How do these wards that are disabled, many of them severely, how do they even get into court?
>
> ***
>
> So if when I make people wards of the court, I take them under my wing so to speak, I'm suppose[d] to be concerned that they are protected. I would hazard to say

that my colleagues in Cook County would probably feel the same way. If I have people in Clinton County in front of me that people in Clinton County or from the surrounding area are saying aren't being properly taken care of, I think I should act and intervene.

Now, if the Cook County court wants to take jurisdiction, I think I can defer. I can transfer it back. I can send it back there. But it seems to me that your argument taken to the extreme means that the disabled, the deaf, dumb, mute, if you will–that's politically incorrect language, but the person can't speak, can't talk, can't hear at [Murray] is allegedly being mistreated, somehow has to get back to Cook County to so say I'm being improperly treated. I can't go that way."

¶ 30      The circuit court, therefore, believed it had concurrent jurisdiction, and we agree.

¶ 31      *Cobleigh v. Matheny*, 181 Ill. App. 170 (1913), supports the circuit court's finding of concurrent jurisdiction. In that case, a petition was filed in the probate court of Fulton County by a guardian on behalf of a minor ward seeking a citation against a guardian previously appointed in the circuit court of Fayette County over the same minor ward for money alleged to be in possession of the first guardian which allegedly belonged to the ward. Since the initial appointment of guardian in Fayette County, the ward and his mother moved to Fayette County. The *Cobleigh* court explained:

> "On the removal of the ward and his mother to Fulton county and his selection of a guardian by the minor on his arriving at the age of fourteen years, the question as to whether the appointment should be made by the court that originally had jurisdiction over the estate of the ward, or by the probate court of the county to which the residence of the ward had been changed does not appear to have been directly passed on by the courts of appeal in this state, and the general rule is that the court that originally had jurisdiction in the estate will continue to hold it [citation], but this is a question ordinarily of statutory provision. We hold, however, that because of the equitable nature of the proceeding and for the convenience of the ward the court in the county of his residence had the right to appoint a new guardian." *Cobleigh*, 181 Ill. App. at 175-76.

¶ 32      While *Cobleigh* is not binding authority due to the fact that it precedes the amendment of the courts act in 1935, it is nevertheless persuasive authority. See *Reichert v. Court of Claims*, 203 Ill. 2d 257, 262 n.1, 786 N.E.2d 174, 178 n.1 (2003).

¶ 33      Even though *Cobleigh* was decided over 100 years ago, we find it persuasive today. Here, many of the OSG wards have probate proceedings pending in counties other than Clinton. The circuit courts of the counties in which the OSG was named guardian over the wards retain their original jurisdiction, but the circuit court of Clinton County, where Murray is located, has concurrent jurisdiction. To expect each of these OSG wards to go back to their original county and file a petition would simply be wrong. Therefore, we do not agree the preliminary injunction needs to be dissolved even though several of the OSG wards are the subject of pending probate proceedings in other counties. The circuit court pointed out the impracticability and insensibility of requiring severely disabled wards to return to the county where their probate actions are pending to file a petition for appointment of a temporary guardian *ad litem* to review whether the OSG is acting in a ward's best interests. After careful consideration, we find the trial court did not abuse its discretion in denying respondents' motion to dismiss.

## III. TEMPORARY GUARDIAN *AD LITEM*

The final issue we are asked to consider is whether the preliminary injunction should be dissolved on the basis that the temporary guardian *ad litem*'s powers exceed the permissible scope of a guardian *ad litem*'s duties. Respondents argue that by prohibiting the State Guardian from transferring its wards from Murray without the consent of Freeman, the temporary guardian *ad litem*, the circuit court effectively granted Freeman veto power over the State Guardian's placement decisions and essentially makes Freeman a coguardian with regard to placement decisions. Respondents insist this is an unprecedented and impermissible investiture of power in a guardian *ad litem*. We disagree.

Section 11a-4 of the Act specifically allows for the appointment of a temporary guardian in pertinent part as follows:

> "§ 11a-4. Temporary guardian.
>
> (a) Prior to the appointment of a guardian under this Article, pending an appeal in relation to the appointment, or pending the completion of a citation proceeding brought pursuant to Section 23-3 of this Act, *** the court may appoint a temporary guardian upon a showing of the necessity therefor for the immediate welfare and protection of the alleged disabled person or his or her estate on such notice and subject to such conditions as the court may prescribe. In determining the necessity for temporary guardianship, the immediate welfare and protection of the alleged disabled person and his or her estate shall be of paramount concern, and the interests of the petitioner, any care provider, or any other party shall not outweigh the interests of the alleged disabled person. The temporary guardian shall have all of the powers and duties of a guardian of the person or of the estate which are specifically enumerated by court order." 755 ILCS 5/11a-4(a) (West 2012).

The circuit court's order specifically appoints Freeman as "temporary Guardian *Ad Litem* for the purposes of these proceedings for the OSG Wards." The circuit court found Freeman's "appointment is necessary to provide for the best interests of the OSG Wards."

The circuit court prohibited respondents "from transferring any disabled adult who is a resident of [Murray] and under the guardianship of the [OSG] from [Murray] without consent of the temporary guardian *ad litem* Stuart [*sic*] Freeman until further order of this court." The circuit court also specifically stated that while "[v]arious proposed orders have suggested that the parties perform additional further acts or that the GAL undertake certain activities," "[n]o ruling is made with respect to those further acts or activities. The parties are encouraged to cooperate." Contrary to respondents' assertions, the circuit court's order in no way creates a "super-guardian." Instead, the circuit court's order complies with section 11a-4 of the Act because the order appoints a temporary guardian for a limited purpose and attempts to ensure that the immediate welfare and protection of the OSG wards remains the paramount concern.

The circuit court was extremely precise as to the circumscribed power it was giving the temporary guardian. The circuit court's appointment of a temporary guardian *ad litem* requires that the best interests of the OSG wards be considered over political and budgetary considerations surrounding the closure of Murray. Accordingly, neither respondents nor Equip for Equality has convinced us that the circuit court's order is in error.

CONCLUSION

¶ 40        For the foregoing reasons, the order of the circuit court of Clinton County is hereby affirmed in its entirety.


¶ 41        Affirmed.

¶ 42        JUSTICE CATES, specially concurring.

¶ 43        I concur in the result reached by the majority. In my view, the circuit court's appointment of a temporary guardian *ad litem* for the limited purposes set forth in its order was proper. The guardian *ad litem* functions as the eyes and ears of the court and his or her role is to make recommendations as to what is in the best interests of and what will protect the immediate welfare of the wards. Once a person is adjudicated disabled, the person remains under the jurisdiction of the court, even when a plenary guardian has been appointed. See *In re Mark W.*, 228 Ill. 2d 365, 375, 888 N.E.2d 15, 21 (2008); *In re Estate of Nelson*, 250 Ill. App. 3d 282, 621 N.E.2d 81 (1993). The court has a duty to "judicially interfere" and protect the ward if the guardian is about to do anything that would cause harm. *In re Mark W.*, 228 Ill. 2d at 375, 888 N.E.2d at 21.

¶ 44        I believe that the circuit court had the authority to appoint a temporary guardian *ad litem* based upon the allegations contained in the pleadings before the court. This appointment does not interfere with the duties and responsibilities of the State Guardian; rather, it permits the court to obtain information from a disinterested party, in order to determine what is in the best interests of the wards and to supervise the manner in which the State Guardian provides for the care and support of the wards. With or without the label of injunctive relief, the circuit court's order, prohibiting transfer of the wards under the guardianship of the Office of State Guardian from Murray Center without the consent of the temporary guardian *ad litem* until further order of the court, is proper and within the court's authority.