# Illinois Official Reports

## Appellate Court

---

### *In re S.F.*, 2020 IL App (2d) 190248

---

| | |
|---|---|
| Appellate Court Caption | *In re* S.F., a Minor (Correy K. and Sarah K., Petitioners-Appellees, v. Robyn B., Respondent-Appellant). |
| District & No. | Second District<br>No. 2-19-0248 |
| Filed | April 2, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, No. 13-P-97; the Hon. Joseph R. Voiland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Randy K. Johnson, of West Dundee, and Vickie Voukidis, of Wheaton, for appellant.<br><br>Daniel J. Moriarty, of Daniel J. Moriarty, P.C., of Naperville, for appellees. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, Robyn B., appeals from orders of the trial court (1) finding that petitioners, Correy and Sarah K., had standing under the Probate Act of 1975 (Act) (755 ILCS 5/1-1 *et seq.* (West 2016)) to bring their motion to remove respondent as plenary guardian of S.F., a minor, and (2) removing respondent as guardian for good cause, on the court's own motion. For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    S.F. was born June 15, 2010. In May 2013, S.F.'s biological mother transferred physical possession of S.F. to respondent, who had no biological relationship to S.F. (According to respondent's statement of facts, she "was S.F.'s temporary guardian from May 2013 until her appointment as plenary guardian on March 23, 2015." However, respondent points to nothing in the record to substantiate this claim.)

¶ 4    Shortly after acquiring possession of S.F., respondent placed her with Chad and Tracy Voegele. On October 22, 2013, five months after S.F. had been living with the Voegeles, respondent filed a petition seeking her appointment as S.F.'s guardian. S.F. lived with the Voegeles for approximately one and a half years. In November of 2014, while S.F. was on vacation with respondent, respondent made the determination that the Voegeles were not taking proper care of S.F. and did not return her to them.

¶ 5    In January 2015, respondent introduced S.F. to petitioners, for the purpose of determining whether it would be suitable for petitioners to adopt S.F. In mid-January 2015, S.F. began living full time with petitioners. Although S.F. spent some nights and some weekends with respondent, she mostly stayed with petitioners. She slept, did chores, played, and did schoolwork at petitioners' home. S.F. also went on vacations and to dog shows with petitioners and worked with them in their business of training, taking care of, and showing dogs.

¶ 6    On March 23, 2015, respondent was appointed as plenary guardian of S.F. However, as the trial court found, from January 12, 2015, through December 27, 2015, S.F. lived and resided full time with petitioners. While S.F. resided with them, petitioners assumed responsibility for her day-to-day activities and needs. Petitioners and respondent shared responsibilities regarding S.F.'s schooling and medical needs. The parties communicated often and effectively regarding S.F.'s upbringing and needs and, for the most part, worked in concert to meet S.F.'s best interests.

¶ 7    In the fall of 2015, the relationship between the parties began to deteriorate. Although the parties continued to communicate regarding S.F., disagreements began to surface with respect to petitioners' attendance at dog shows, petitioners' employment and work schedules (and the effect they were having on S.F.), the lack of respect shown towards respondent, and the failure to stick to agreed-upon plans and instructions.

¶ 8    On December 27, 2015, S.F. spent the night at respondent's residence. On December 28, 2015, respondent notified petitioners that S.F. did not want to return to petitioners, and on December 30, 2015, respondent indicated that S.F. was staying with her permanently. On December 31, 2015, petitioners filed their petition seeking removal of respondent as plenary guardian. On January 13, 2016, respondent filed a response to the petition. On the same date,

an agreed order was entered reappointing Linda Salfisburg as guardian *ad litem* (GAL), with respondent and petitioners to share responsibility for paying her fees.

¶ 9 On February 22, 2016, an order was entered providing that the GAL "shall conduct her investigation by determining the best interest evaluation as well as the facts alleged in the pleadings." On April 4, 2016, an order was entered providing that the GAL was to meet with S.F. and petitioners within 10 days. On April 27, 2016, an order was entered requiring respondent "to comply with the terms" of the April 4 order by May 4, 2016. On May 16, 2016, petitioners filed against respondent a petition for a rule to show cause, seeking to have her found in contempt for her failure to comply with the court orders of April 4 and 27. A rule to show cause was issued on May 16, 2016.

¶ 10 Also, on that date, on its own motion, the court scheduled a hearing for May 27, 2016, on whether respondent should be removed as guardian. On May 20, 2016, respondent filed motions to dismiss petitioners' petition for removal and to vacate the hearing set for May 27, 2016. Both motions were denied on May 25, 2016. On May 27, 2016, after the hearing on the court's motion to consider respondent's removal, the court removed respondent as guardian and appointed petitioners as temporary guardians, pending a hearing on petitioners' petition for removal or further order of the court.

¶ 11 On May 31, 2016, respondent filed an emergency motion to vacate the court's order of May 27, 2016, based on an allegation by S.F.'s therapist that Correy K. sexually abused S.F. Respondent called DCFS, which put a safety plan in place for 10 days and then closed the case as "unfounded." On June 17, 2016, the court denied respondent's motion.

¶ 12 On June 27, 2016, respondent filed a notice of appeal of the court's orders of May 27, 2016, and June 17, 2016. On July 14, 2017, this court issued an order pursuant to Illinois Supreme Court Rule 23 (eff. July 1, 2011), dismissing the appeal for lack of jurisdiction because the removal of respondent as guardian was not a final order. The mandate was filed on October 30, 2017, and a hearing on this matter commenced March 26, 2018, and concluded November 2, 2018.

¶ 13 On December 21, 2018, the trial court entered a written order in which it referenced its removal of respondent as guardian and ruled that petitioners' petition for removal was, therefore, moot. The order then evaluated best-interest factors and concluded that designating petitioners as plenary guardians was in S.F.'s best interest. Respondent's motion to reconsider was denied on March 1, 2019, and this appeal ensued.

¶ 14                              II. ANALYSIS
¶ 15                A. Respondent's Motion to Strike Portions of Brief
¶ 16 Preliminarily, we address respondent's motion to strike petitioners' statement of facts and to strike and disregard a citation to a Rule 23 order. Respondent argues that petitioners' statement of facts contains argument, conclusory statements, and inappropriate or absent record citations, thereby violating Illinois Supreme Court Rule 341(h)(6) (eff. July 1, 2017). Although we may, in our discretion, strike improper portions of a brief, we decline respondent's request because the violations here are not "so flagrant as to hinder or preclude review" (internal quotation marks omitted) (*Hubert v. Consolidated Medical Laboratories*, 306 Ill. App. 3d 1118, 1120 (1999)); accordingly, we will not strike the statement of facts but "will simply disregard any portions that we believe violate Rule 341." *In re Marriage of Milne*, 2018

IL App (2d) 180091, ¶ 22 n.4. Similarly, we will not strike the citation to the Rule 23 order but will simply disregard it, as we would have irrespective of any motion.

¶ 17                                    B. Standing

¶ 18    Respondent contends that petitioners lacked standing to bring their petition for removal and that the trial court erred in finding that respondent "waived any objection to [petitioners'] standing in that [she] consented to [petitioners'] participation in these proceedings and failed to assert any claim for lack of standing until the eve of hearing on the [petitioners'] Motion to Remove." The parties and the trial court use the term "waiver" exclusively. "However, we recognize that [w]hile waiver is the voluntary relinquishment of a known right, forfeiture is the failure to timely comply with procedural requirements." (Internal quotation marks omitted.) *In re Parentage of Scarlett Z.-D.*, 2014 IL App (2d) 120266-B, ¶ 22 n.3.

¶ 19    We agree with the trial court that respondent's consent to petitioners' participation in the proceedings constituted waiver. Petitioners filed their petition for removal on December 31, 2015. Respondent waived her objection to petitioners' standing on January 13, 2016, when she entered into an agreed order reappointing the GAL, with respondent and petitioners to pay her fees. However, waiver is a limitation on the parties, not the court. *In re T.P.S.*, 2011 IL App (5th) 100617, ¶ 12.

¶ 20    We do not agree, moreover, that respondent forfeited her objection to petitioners' standing. Lack of standing is an affirmative matter that is properly raised under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). *Scarlett Z.-D.*, 2015 IL 117904, ¶ 20. A section 2-619 motion to dismiss must be brought "within the time for pleading." 735 ILCS 5/2-619(a) (West 2016); *Scarlett Z.-D.*, 2015 IL 117904, ¶ 20. However, a trial court may allow a motion to dismiss outside the time for pleading when the issue of standing is "clearly at issue and not a surprise." *Scarlett Z.-D.*, 2014 IL App (2d) 120266-B, ¶ 24 (citing *In re Custody of McCarthy*, 157 Ill. App. 3d 377, 380-81 (1987) (when there is no prejudice, "the trial court does not abuse its discretion by allowing tardy pleadings")).

¶ 21    Petitioners filed their petition for removal on December 31, 2015. In her response, filed January 13, 2016, respondent raised the issue of standing, stating that petitioners "are not interested persons defined under the Act." On May 16, 2016, the trial court granted respondent "leave to file whatever motions you want," including a motion to dismiss on jurisdictional grounds. In her section 2-619 motion to dismiss, filed on May 20, 2016, respondent argued that petitioners lacked standing under section 11-14.1 of the Act, which provides that a petition for termination of a guardian may be filed by "a minor's living, adoptive, or adjudicated parent whose parental rights have not been terminated." 755 ILCS 5/11-14.1(b) (West 2016). Petitioners make no claim that they were surprised or otherwise prejudiced by the tardy motion. Accordingly, we determine that respondent did not forfeit her claim that petitioners lacked standing to bring their petition for removal.

¶ 22    Although respondent *waived* her objection to petitioners' standing, we choose to address it on the merits because the issue is important. *T.P.S.*, 2011 IL App (5th) 100617, ¶ 12.

¶ 23    Section 23-2 of the Act provides for the removal of a representative as follows:

        "§ 23-2. Removal.

        (a) On petition of any interested person or on the court's own motion, the court may remove a representative if:

(9) the representative becomes incapable of or unsuitable for the discharge of the representative's duties; or

(10) there is other good cause." 755 ILCS 5/23-2(a)(9), (10) (West 2016).

See *Friends for Murray Center Inc. v. Department of Human Services*, 2014 IL App (5th) 130481, ¶ 16.

¶ 24 Section 1-2.15 of the Act provides that a representative includes a guardian. 755 ILCS 5/1-2.15 (West 2016); see *Friends for Murray Center Inc.*, 2014 IL App (5th) 130481, ¶ 17.

¶ 25 An "interested person" is defined under the Act in pertinent part as follows:

"§ 1-2.11. 'Interested person' in relation to any particular action, power or proceeding under this Act means one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, *including without limitation* an heir, legatee, creditor, person entitled to a spouse's or child's award and the representative." (Emphasis added.) 755 ILCS 5/1-2.11 (West 2016).

See *Friends for Murray Center Inc.*, 2014 IL App (5th) 130481, ¶ 18.

¶ 26 Our review is *de novo. Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004).

¶ 27 First, respondent argues that the trial court misconstrued and misapplied the Act in arriving at its conclusion that petitioners had standing because it referenced section 11-13(e) (755 ILCS 5/11-13(e) (West 2016)) as support for the proposition that "an interested party" may petition the court to seek removal of a guardian. Respondent correctly points out that section 11-13(e) applies to a "standby or short-term" guardian, not a plenary guardian such as respondent. *Id.* The trial court, however, additionally cited section 23-2, which, as set out above, permits an "interested person" to petition for the removal of a representative, including a guardian, without employing such limiting terms as "standby or short-term" guardian.

¶ 28 Next, respondent contends that petitioners do not meet the definition of "interested person" in section 1-2.11 because they did not have or represent a financial interest, property right, or fiduciary status in relation to S.F. or respondent's guardianship at the time the petition was filed "or at any other time." We disagree. Although not defined in the Act, "fiduciary," when used as an adjective, means "held, or founded in trust or confidence." Webster's Third New International Dictionary 845 (1993). We believe that petitioners' relationship with S.F. was "founded in trust or confidence" during the 11 months she resided with them full time, just before they filed their petition for removal. Alternatively, petitioners "represented" respondent's own fiduciary status during this time. See *In re Estate of Lieberman*, 391 Ill. App. 3d 882, 887 (2009) ("The relationship between a guardian and [her] ward is that of fiduciary as a matter of law."). The Act is "to be liberally construed." 755 ILCS 5/1-9 (West 2016). We conclude that petitioners reasonably fall within the Act's definition of "interested person."

¶ 29 The trial court concluded that petitioners were "interested persons" within the meaning of the Act and had standing to bring their petition, based on the following "overwhelming" evidence:

"[F]rom January of 2015 to immediately prior to the filing of [petitioners'] Motion to Remove Guardian, [respondent] voluntarily consented to and transferred physical possession of [S.F.] to [petitioners]; the parties contemplated that the transfer of [S.F.] to [petitioners] would be of a permanent nature; and [petitioners] became responsible

for the care and welfare of [S.F.] during this period. Based upon the intimate relationship that was established between [S.F.] and [petitioners], [petitioners] assumed the unique position to advocate for the best interests of [S.F.]. Based upon the lack of any parent, relative or other party being able to or wanting to assert a claim for what was in [S.F.'s] best interest, and [petitioners] lengthy involvement with [S.F.], a sufficient basis was provided for them to assert a claim seeking removal of respondent as guardian and for their appointment as replacement guardian."

¶ 30    Respondent takes issue with the trial court's decision "to confer standing on [petitioners] '[b]ased upon the lack of any parent, relative or other party being able to or wanting to assert a claim for what was in [S.F.'s] best interest.' " Respondent claims that she is such an "other party," and she asserts "the superiority of her legal status" as S.F.'s plenary guardian during the time in question as apparent evidence of her ability and willingness to make a claim regarding S.F.'s best interest. The trial court's comment, however, addresses only whether petitioners have standing to assert a claim that respondent's continuing status as guardian is not in S.F.'s best interest. Any claim by respondent as to S.F.'s best interest is not relevant to this particular inquiry

¶ 31    Respondent relies on *T.P.S.*, 2011 IL App (5th) 100617, ¶ 18, in which the court stated, "[a]lthough a nonparent who has been legally appointed as a guardian has standing, other third parties do not." *T.P.S.*, however, is fundamentally distinguishable from this case. There, a biological mother sought to terminate her former partner's co-guardianship of her child. The appellate court concluded that the former partner had standing to oppose the petition because she had been legally appointed as a guardian; other third parties did not have standing, however, given the respondent's superior parental rights. *Id.*; see *In re R.L.S.*, 218 Ill. 2d 428, 434 (2006) ("[t]he superior rights doctrine, which holds that parents have the superior right to the care, custody, and control of their children, is incorporated in *** the Probate Act"). Here, where no parental rights are involved, the rule excluding "other third parties" from standing does not apply.

¶ 32    Respondent also relies on *Scarlett Z.-D.*, 2015 IL 117904, in which the supreme court rejected the respondent's former boyfriend's claims of standing under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2012)), based on various "functional parent" theories. Respondent argues that the "overwhelming" evidence cited by the trial court in finding that petitioners are "interested persons" under the Act describes petitioners' functional or *de facto* parenting, which, the supreme court stated in *Scarlett Z.-D.*, "Illinois does not recognize." *Scarlett Z.-D.*, 2015 IL 117904, ¶ 45.

¶ 33    *Scarlett Z.-D.*, however, is readily distinguishable from this case. There, the supreme court noted that the Marriage Act's standing requirement "safeguards the superior right of parents to the care and custody of their children." *Id.* ¶ 35. As the child's adoptive parent, the respondent qualified as a parent under the Marriage Act. *Id.* ¶ 37. Although the former boyfriend conceded that he lacked standing under the Marriage Act, he sought "equitable" standing to assert parental rights as the " '*de facto*, equitable and psychological parent' " of the respondent's adopted daughter. *Id.* ¶¶ 34, 38. The supreme court held that he could not "petition for custody, visitation, and support as [the child's] 'parent' because Illinois does not recognize functional parent theories." *Id.* ¶ 45.

¶ 34    Here, in contrast, the trial court's evocation of petitioners' 14-month relationship with S.F. served the limited purpose of establishing that they were "interested persons" who had standing

under the Act to assert guardianship rights. Accordingly, the supreme court's discussion of functional parenting in *Scarlett Z.-D.* is not relevant to the standing issue presented in this case.

¶ 35      We conclude that petitioners had standing as "interested persons" under the Act to seek respondent's removal as guardian of S.F. and their own appointment as guardians.

¶ 36                 C. Respondent's Removal as Guardian

¶ 37      Section 23-2(a) of the Act applies to the termination of a guardianship (*In re Estate of Wadman*, 110 Ill. App. 3d 302, 304 (1982)), and as noted above, a guardian may be removed if she "becomes incapable of or unsuitable for the discharge of [her] duties" or if "there is other good cause." 755 ILCS 5/23-2(a)(9), (10) (West 2016). The trial court may remove a guardian for good cause on the petition of an interested person or on its own motion. *Id.* § 23-2(a)(10). We review the trial court's decision to remove a guardian under the manifest-weight-of-the-evidence standard (*Wadman*, 110 Ill. App. 3d at 308) and will not disturb it unless "it is unreasonable, arbitrary and not based on the evidence, or when the opposite conclusion is clearly evident from the record." (Internal quotation marks omitted.) *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 19.

¶ 38      Illinois circuit courts also "have an inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature." *In re M.M.*, 156 Ill. 2d 53, 63 (1993) (this jurisdiction exists "by inheritance from the English courts of chancery" (internal quotation marks omitted)); see also *In re Estate of Green*, 359 Ill. App. 3d 730, 737 (2005) ("[c]ourts of equity have plenary jurisdiction over the persons and estates of infants, and will *** cause to be done whatever may be necessary to preserve their estates and protect their interest" (internal quotation marks omitted)). Although the probate court has broad discretion in determining whether to appoint a guardian, its decision may be overturned if we find the court abused its discretion or if the decision is against the manifest weight of the evidence. *Id.* at 735.

¶ 39      In this case, the trial court's decision to remove respondent as guardian for good cause was based upon her "refusal to obey court orders, [and] to meet with the GAL, and her willingness to substitute her judgment for that of the court." Respondent's challenges to the court's decision are largely procedural. For example, respondent asserts that the court erred in ordering "visitation" between S.F. and petitioners before it conducted a best-interest hearing. In support of her assertion, however, respondent cites a section of the Act (755 ILCS 5/11-7.1 (West 2016)) that does not apply because it addresses interested parties' visitation rights with respect to adopted minors.

¶ 40      Respondent contends that the trial court erred in deciding its own motion to remove respondent on May 27, 2016, without advising respondent as to the bases for her removal. Respondent cites to *In re Estate of Austwick*, 275 Ill. App. 3d 665, 671 (1995). Although *Austwick* recites the applicable statutory provision, its holding does not support respondent's claim of error.

¶ 41      Section 23-3(a) of the Act provides that, "[b]efore removing a representative for any of the causes set forth in [s]ection 23-2, the court shall order a citation to issue directing the respondent to show cause why [she] should not be removed for the cause stated in the citation." 755 ILCS 5/23-3(a) (West 2016). Illinois law recognizes, however, that "evidence of substantial compliance with section 23-3 is shown when a party was awarded a fair hearing and was not prejudiced by formal deficiencies in procedure." (Internal quotation marks

- 7 -

omitted.) *In re Estate of Young Tait*, 2017 IL App (3d) 150834, ¶ 20 (citing cases). In *Austwick*, for example, the court found substantial compliance when the public guardian was notified and both parties were allowed to present evidence in support of their position at a hearing. *Austwick*, 275 Ill. App. 3d at 671.

¶ 42    Here, the evidence shows that respondent was not prejudiced by the lack of statutory notice. On May 16, 2016, and again on May 25, 2016, the court explained in detail its concern about respondent's "willful" violations of its order to make S.F. available for a meeting with the GAL and petitioners and its later order requiring her compliance. As respondent acknowledges, these orders were entered on April 4 and April 27, 2016, respectively. She plainly knew of her noncompliance, and the court's concern, no later than April 27. Additionally, in court on May 16, respondent accepted service of a rule to show cause as to why she should not be held in civil contempt for her failure to obey these orders. On May 25, 2016, the court apprised respondent's new counsel that respondent had disregarded previous orders of the court and it explicitly stated that noncompliance with court orders would be considered in determining the motions to remove respondent as guardian on May 27, 2016.

¶ 43    The evidence further shows that the GAL was thoroughly questioned by the parties and the court on the impact of respondent's lack of cooperation with the GAL's investigation and that respondent was given ample opportunity to rebut the contentions that she was uncooperative. We conclude that respondent received a fair hearing and was not prejudiced by any formal deficiencies in procedure; thus, there was substantial compliance with section 23-2(a).

¶ 44    Additionally, we conclude that the evidence supports the trial court's decision to remove respondent for good cause. According to respondent, "the GAL testified that [respondent's] compliance [*sic*] with the visitation orders did not impact her investigation or ability to make a recommendation." As the GAL later explained, however, five months had passed since respondent took S.F. back from petitioners, during which time S.F. was permitted no contact with petitioners and gave inconsistent accounts of her time with them. Nevertheless, the GAL believed that a meeting with S.F. and petitioners would have been "important for sure" and "helpful" to her investigation of S.F.'s best interest.

¶ 45    Respondent also asserts that the trial court erred in refusing to hear the testimony of S.F.'s treating therapist, who saw S.F. twice, on April 25 and May 2, 2016. The court sustained petitioners' objections to most of the therapist's testimony on the ground that it went to S.F.'s best interest, which the court ruled was beyond the scope of its motion to remove respondent for good cause. The trial court has discretion to exclude a witness's testimony, and we may not overturn that decision absent a clear abuse of discretion. *In re H.S.H.*, 322 Ill. App. 3d 892, 896 (2001). "An abuse of discretion occurs only where no reasonable person could agree with the position taken by the trial court." *In re Estate of Wright*, 377 Ill. App. 3d 800, 803-04 (2007). We do not believe that the court abused its discretion with respect to the therapist's testimony.

¶ 46    The record also supports the trial court's contention that respondent was willing to substitute her judgment for that of the court. For example, at the May 27, 2016, hearing, she testified that, although she was afraid of being held in contempt, she had to balance that possibility with her fears that the court-ordered meeting of the GAL, S.F., and petitioners would harm S.F. Without consulting the court, she invited the therapist to attend the meeting. Then, days after the time allowed for compliance with the court's orders, she agreed to a meeting in the therapist's office, advising the GAL that the therapist "will be present in that

meeting for its duration [and] is instructed to contact me immediately to pick up [S.F.] if she feels or sees that at any time during this meeting [S.F.] is under duress." The meeting never took place. When asked if she did not want the meeting to happen, she answered "[my] duty is to the child" and "correct." She further stated that it was her duty "to not allow [S.F.] to be harmed or subjected to further harm in a situation where I feel she's been physically abused." Additionally, she testified that S.F.'s availability for a meeting was limited by S.F.'s other activities.

¶ 47 At the conclusion of the May 27, 2016, hearing, the trial court removed respondent as plenary guardian, finding that, due to respondent's violations of the court's orders, the GAL was unable to determine S.F.'s best interest, which precluded her from making a recommendation. The court stated that it was "not satisfied that [respondent] can or will follow future orders of the [c]ourt." The removal order was entered without prejudice to respondent's reappointment. The court then appointed petitioners as temporary guardians pending a "full and complete hearing on the petition to remove or until further order of the [c]ourt." The court also ordered an evaluation of S.F. by a psychologist or a psychiatrist and directed the GAL to complete her best-interest investigation.

¶ 48 Between March and November, 2018, the trial court held a hearing on the issues, including the original petition for removal, whether respondent should be reinstated as guardian, whether petitioners' appointment as temporary guardians should be terminated and they should be appointed as successor guardians, and what is in S.F.'s best interest. On December 21, 2018, the trial court entered a written order in which, *inter alia*, the court referenced its May 27, 2016, removal of respondent and ruled that petitioners' petition for removal was, therefore, moot.

¶ 49 On appeal, respondent challenges this part of the December 21, 2018, order, arguing that it contradicts the court's previous ruling that it appointed petitioners as temporary guardians pending a "full and complete hearing on the petition to remove." Respondent ignores the alternative stated in the court's earlier order: "or until further order of the [c]ourt." The trial court's December 21, 2018, assertion of its statutory authority to remove a guardian on its own motion is not inconsistent with its May 27, 2016, ruling.

¶ 50 In its order of December 21, 2018, the trial court also undertook an intensive analysis of S.F.'s best interest to determine whether respondent or petitioners should be appointed as her plenary guardian. In considering the factors set forth in the Marriage Act (750 ILCS 5/602.5 (West 2016)) for determining a minor's best interests, the court emphasized the court-appointed psychologist's recommendation that S.F. "needs the sense of security of having one mom and one dad." The court found that respondent was "solely responsible for [S.F.'s] being bounced around from family to family" and stated that "[a]lthough [respondent] now insists that it is her intention to keep [S.F.] in her home, her past conduct belies her present intent"; thus, the court had "no assurance that if respondent were reappointed guardian, she would cease trying to place [S.F.] with other families." The court concluded that it was in S.F.'s best interest that petitioners be designated her plenary guardians.

¶ 51 Respondent does not contest the trial court's findings or conclusion. Rather, by limiting her challenge to the court's decisions prior to its ruling, respondent appears to presume prejudice. Because we find no reversible error in the trial court's handling of this matter, we do not believe that a different outcome is warranted.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit Court of Kendall County.

Affirmed.