# Illinois Official Reports

## Appellate Court

---

**Kollross v. Goldstein, 2021 IL App (1st) 200008**

---

| | |
|---|---|
| Appellate Court Caption | WENDY KOLLROSS, Plaintiff-Appellant, v. LAURA GOLDSTEIN, LIYUAN YU, and NORTHWESTERN LAKE FOREST HOSPITAL, Defendants-Appellees. |
| District & No. | First District, Second Division<br>No. 1-20-0008 |
| Filed | March 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-6351; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Keith L. Young, of Lincolnshire, for appellant.<br><br>Susan K. Laing and Catherine J. Ó Súilleabháin, of Anderson, Rasor & Partners, LLP, of Chicago, for appellees. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion. |

## OPINION

¶ 1 This appeal stems from a medical malpractice lawsuit filed by plaintiff, Wendy Kollross, against defendants, Dr. Laura Goldstein, Dr. Liyuan Yu, and Northwestern Lake Forest Hospital (Northwestern). Plaintiff filed suit after defendants failed to diagnose a meningioma, a type of brain tumor, in an MRI taken of plaintiff's head in February 2013. Defendants answered the original complaint but then withdrew their answers and filed a motion to dismiss, which was partially granted. Plaintiff later filed an amended complaint, which was ultimately dismissed as untimely under the applicable statute of repose. On appeal, plaintiff argues that the circuit court erred in (1) allowing defendants to withdraw their answers to her original complaint and file a motion to dismiss and (2) dismissing the amended complaint. For the following reasons, we affirm.

## I. BACKGROUND

¶ 2

¶ 3 The following facts are taken from the pleadings and depositions.

¶ 4 On January 28, 2013, plaintiff presented to Dr. Goldstein, a neurologist at Northwestern, with complaints of headaches and pulsating tinnitus. Dr. Goldstein ordered an MRI of plaintiff's head, which was interpreted on February 6, 2013, by Dr. Yu, a Northwestern neuroradiologist. Based on Dr. Yu's interpretation, Dr. Goldstein informed plaintiff via telephone that the images were "all normal and fine." Plaintiff next saw Dr. Goldstein for a follow-up on April 8, 2013. That was the last time plaintiff saw or spoke to Dr. Goldstein prior to the filing of the instant lawsuit. Plaintiff never saw or spoke to Dr. Yu prior to the lawsuit.

¶ 5 On August 31, 2017, plaintiff saw Dr. Jeffrey Schonberg, an ear, nose, and throat doctor at Northshore University HealthSystem (Northshore), with complaints of worsening tinnitus. Dr. Schonberg ordered an MRI, which was performed in September 2017 and revealed plaintiff's meningioma. Dr. Schonberg referred plaintiff to Northshore neurosurgeon Dr. Ricky Wong for a surgical consult. After reviewing the September 2017 MRI, Dr. Wong opined that he "didn't like radiation" and instructed plaintiff to follow-up in a year or two to see if surgery became necessary.

¶ 6 Plaintiff next saw neurosurgeon Dr. Richard Byrne at Rush University Medical Center (Rush) for a second opinion. Dr. Byrne told plaintiff that she was "not a surgical candidate" and recommended that she undergo radiation treatment instead. He referred her to Dr. Aidnag Diaz, a Rush radiation oncologist who also suggested radiation treatment. Plaintiff further sought out the opinion of neurosurgeon Dr. Jeff Frank.

¶ 7 After these visits, in October 2017, plaintiff called Northwestern and "ask[ed] them to take another look" at her 2013 MRI in light of the meningioma found in the 2017 images. On October 10, 2017, plaintiff received a call from Dr. Don Hebel, the chief of Northwestern's radiology department. They discussed the meningioma, and Dr. Hebel requested that plaintiff send a copy of the 2017 MRI for comparison. Plaintiff did not send those images to Northwestern because she was seeking treatment at the Mayo Clinic at that time. Plaintiff later received a copy of an addendum that Dr. Yu added to the report of the 2013 MRI. The addendum noted the presence of the meningioma. Neither Dr. Goldstein nor Dr. Yu personally discussed the meningioma with plaintiff.

¶ 8 Plaintiff ultimately underwent radiation treatment at the Mayo Clinic beginning in November 2017. She also had several follow-ups and additional imaging performed there, the last of which was apparently in December 2018 when her condition was reported as "stable."

¶ 9 Plaintiff filed her original complaint in this matter on June 20, 2018, alleging professional negligence and fraudulent concealment against defendants. Specifically, plaintiff alleged that defendants negligently failed to diagnose her meningioma from the 2013 MRI, thereby limiting her treatment options by the time it was discovered in the 2017 MRI. The complaint further alleged fraudulent concealment in that defendants knew the 2013 MRI showed a meningioma but purposefully concealed that information by telling her the images were normal and that no follow-up care was necessary.

¶ 10 On September 27, 2018, Dr. Goldstein and Dr. Yu filed answers to the complaint, essentially denying all material allegations. Northwestern filed a similar answer on October 1, 2018.

¶ 11 Thereafter, on December 28, 2018, defendants filed a motion for leave to withdraw their answers so that they may file a motion to dismiss the complaint. Attached as an exhibit to the motion to withdraw was a proposed combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The proposed motion to dismiss argued that the complaint was not filed within the time permitted by the applicable statute of repose and that plaintiff did not allege sufficient facts to establish that the time for filing could be extended by fraudulent concealment.

¶ 12 On February 14, 2019, plaintiff filed responses to both defendants' motion to withdraw and the proposed motion to dismiss. Plaintiff argued that a motion to dismiss would be untimely, as it was not filed "within the time for pleading" for purposes of section 2-619 of the Code (*id.* § 2-619). Plaintiff also contended that, in any event, a motion to dismiss should be denied because her complaint sufficiently pled fraudulent concealment such that the statute of repose did not begin to run until October 10, 2017, when defendants informed her about the existence of the meningioma. Plaintiff further contended that her complaint was timely filed because she alleged that, in October 2017, Dr. Goldstein and Dr. Yu "reviewed the February 6, 2013 MRI as part of their continuing treatment of the Plaintiff."

¶ 13 In a written order dated March 21, 2019, the circuit court granted defendants' motion to withdraw their answers and also granted defendant's motion to dismiss with respect to plaintiff's allegations of fraudulent concealment. The court further granted plaintiff leave to file an amended complaint, which she did on April 18, 2019.[1] The amended complaint again alleged that defendants restricted plaintiff's treatment options by negligently failing to diagnose her meningioma in 2013. The amended complaint also alleged that defendants reread the 2013 MRI in 2017 as part of their "continuing treatment" of plaintiff and that Dr. Goldstein and Dr. Yu fraudulently concealed their 2013 negligence by failing to personally disclose the existence of the meningioma to plaintiff after the reread in 2017.

¶ 14 Defendants moved to dismiss the amended complaint in its entirety, arguing that it was barred by the statute of repose and not "saved" by either the continuous course of negligent

---

[1]Defendants also filed a motion to reconsider, arguing that the court should have dismissed the complaint in its entirety because the continuous course of negligent treatment doctrine did not apply. However, the court later deemed the motion to reconsider to be withdrawn as moot because plaintiff had filed an amended complaint.

treatment doctrine or fraudulent concealment. Plaintiff filed a response to the motion to dismiss, and defendants filed a reply.

¶ 15 The circuit court held a hearing on the motion on November 1, 2019. After hearing argument, the court determined that plaintiff's continuous course of negligent treatment theory "doesn't work" because (1) defendants did not render any medical treatment to plaintiff between April 2013 and October 2017 and (2) defendants were not negligent in re-examining the original MRI in October 2017. The court also rejected plaintiff's contention that defendants' motions to withdraw their answers and dismiss the original complaint were untimely, finding that plaintiff had not shown any prejudice. As for fraudulent concealment, plaintiff, relying on our supreme court's decision in *Cunningham v. Huffman*, 154 Ill. 2d 398 (1993), clarified that her position was that the concealment occurred in October 2017, when Dr. Goldstein and Dr. Yu failed to personally inform her of the meningioma. The court took the matter under advisement and allowed the parties to file briefs if they desired.

¶ 16 After receiving additional briefs from both sides, the court dismissed the case on December 6, 2019. This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 On appeal, plaintiff contends that the circuit erred in (1) granting defendants leave to withdraw their answers to the original complaint and (2) dismissing her amended complaint as untimely.

¶ 19 A. Leave to Withdraw Answers

¶ 20 As an initial matter, we note that defendants, citing *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983), contend that plaintiff has forfeited review of defendants' motion to withdraw their answers by filing an amended complaint. In *Foxcroft*, our supreme court adhered to the general rule that where a plaintiff files an amended complaint that is complete in and of itself, the plaintiff forfeits any objection to the trial court's rulings on any former complaints. *Id.* The *Foxcroft* court explained that the reason for this rule is that when an amended pleading does not refer to, adopt, or incorporate a prior pleading, the prior pleading is effectively "abandoned and withdrawn." (Internal quotation marks omitted.) *Id.* at 154. The rule is designed to promote the "efficient and orderly administration of justice" by ensuring that courts and defendants know with certainty which claims plaintiffs may pursue if the case proceeds to trial. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 28. As an example of the rule, in *Bonhomme*, our supreme court held that the plaintiff forfeited review of most claims in her seven-count, second amended complaint by filing a third amended complaint that raised only a single count. *Id.* ¶ 19.

¶ 21 Here, unlike in *Bonhomme*, plaintiff did not abandon anything in her original complaint by failing to include it in the amended complaint. Rather, the core allegations and theories of recovery in the amended complaint are substantially similar to those in the original complaint. A plaintiff does not forfeit claims that are incorporated or referenced in the amended complaint. *Foxcroft*, 96 Ill. 2d at 155. Additionally, the *Foxcroft* rule applies to objections based on "the trial court's ruling *on the former complaints*." (Emphasis added.) *Id.* at 153. Here, plaintiff is challenging not the court's ruling on the sufficiency of the original complaint, but the court's decision allowing defendants to withdraw their answers and file a motion to dismiss in the first place. We also note that instead of abandoning her objection to the timeliness of the withdrawal

of the answers, plaintiff continued to raise the matter throughout the proceedings below. Thus, we find that the rationale of the *Foxcroft* rule does not apply, and that plaintiff has not forfeited the matter.

¶ 22 With that said, we nevertheless find that the circuit court did not err in allowing defendants to withdraw their answers in favor of filing a motion to dismiss. Plaintiff's sole claim of error is that defendants' motion was not made within the "time for pleading" within the meaning of section 2-619(a) of the Code. See 735 ILCS 5/2-619(a) (West 2018) (stating a defendant may file a motion to dismiss "within the time for pleading"). However, a "trial court has the discretion to allow the withdrawal of an answer and the subsequent filing of a tardy motion to dismiss based on a defense not raised in the answer." *In re Custody of McCarthy*, 157 Ill. App. 3d 377, 380 (1987). A trial court does not abuse its discretion in allowing a late pleading where the opposing party does not suffer prejudice. *Id.* at 381; see also *In re S.F.*, 2020 IL App (2d) 190248, ¶ 20; *In re Parentage of Scarlet Z.-D.*, 2014 IL App (2d) 120266-B, ¶ 25; *People v. Cortez*, 338 Ill. App. 3d 122, 128 (2003).

¶ 23 Here, plaintiff has raised no serious argument, either in the circuit court or on appeal, as to how she was prejudiced by allowing defendants to withdraw their answers. Nor could she, as prejudice typically arises where amendments are made immediately before or during trial, neither of which applies in this case. *People ex rel. Foreman v. Village of Round Lake Park*, 171 Ill. App. 3d 443, 448 (1988) (no prejudice in allowing the defendant to amend answer and raise a statute of limitations defense where the trial had not yet begun and no further investigation was required by the parties). As plaintiff suffered no prejudice, the circuit court did not abuse its discretion in allowing defendants to withdraw their answers.

¶ 24 B. Dismissal of the Amended Complaint

¶ 25 We now turn to plaintiff's argument that the circuit court erred in dismissing her amended complaint as untimely. Defendants filed their motion to dismiss under section 2-619(a)(5) of the Code, which allows a defendant to move for involuntary dismissal where "the action was not commenced within the time limited by law." 725 ILCS 5/2-619(a)(5) (West 2018). This court reviews a dismissal under section 2-619(a)(5) *de novo*. *County Line Nurseries & Landscaping, Inc. v. Kenney*, 2020 IL App (1st) 200615, ¶ 20.

¶ 26 1. Statute of Repose

¶ 27 The relevant time for filing in this case is governed by section 13-212 of the Code, which states that an action against a physician or hospital arising out of patient care must be brought within two years of the date on which the plaintiff either knew or should have known about the injury for which damages are sought. 735 ILCS 5/13-212(a) (West 2018). However, section 13-212 also provides that "in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury." *Id.* This four-year statute of repose applies even where a potential plaintiff does not discover her injury during that time period. *Turner v. Nama*, 294 Ill. App. 3d 19, 25 (1997). "While this may result in harsh consequences, the legislature enacted the statute of repose for the specific purpose of curtailing the 'long tail' exposure to medical malpractice claims brought about by the advent of the discovery rule." *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007).

- 5 -

¶ 28    Here, plaintiff commenced this action by filing her original complaint in June 2018, alleging that defendants were negligent for misreading her MRI in February 2013. Thus, there is no dispute that the action was brought more than four years after the act or omission alleged to have caused plaintiff's injuries. Even so, plaintiff contends that the time for filing was extended by two recognized exceptions to the statute of repose: (1) the continuous course of negligent treatment doctrine and (2) fraudulent concealment. As such, we must determine whether either doctrine applies to this case.

¶ 29                         a. Continuous Course of Negligent Treatment

¶ 30    The continuous course of negligent treatment doctrine holds that, when a physician engages in a continuous and unbroken course of negligent treatment that is so related as to constitute one continuing wrong, the statute of repose does not begin to run until the last date of negligent treatment. *Li Jun Huang v. Uribe*, 2020 IL App (1st) 192037, ¶ 35. For example, if a patient is harmed by the cumulative effect of unnecessary exposure to X-ray radiation over a period of years, the statute of repose does not begin to run until the date of the last unnecessary exposure. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 640 (2010). Additionally, the statute begins to run if treatment by the negligent physician is discontinued. *Huang*, 2020 IL App (1st) 192037, ¶ 35.

¶ 31    The doctrine was first adopted by our supreme court in *Cunningham*, 154 Ill. 2d at 404-05. Critically, though, *Cunningham* distinguished a continuous course of *negligent* treatment from a continuous course of treatment, explicitly rejecting the latter as a means to extend the statute of repose. *Id.* at 403. Because the language of section 13-212 "necessarily only encompasses the continuum where the physician is negligent," the *Cunningham* court held that the statute of repose does not begin to run at the last date of treatment where the physician commits an act of negligence but thereafter continues to treat the patient in nonnegligent manner. *Id.* at 407. In such an instance, the statute of reposes instead begins to run from the date of the last *negligent* act or omission, regardless of future nonnegligent care or when the patient becomes aware of the negligence. *Id.* at 406-07.

¶ 32    To successfully allege a continuous course of negligent treatment, a plaintiff must show both that (1) there was a continuous, unbroken course of negligent treatment and (2) that treatment was so related as to constitute one continuing wrong. *Turner*, 294 Ill. App. 3d at 30. "Intermittent or occasional medical services at substantial intervals do not satisfy the continuous treatment doctrine." *Jones v. Dettro*, 308 Ill. App. 3d 494, 498 (1999). Indeed, significant gaps in care are generally fatal to a claim of a continuous course of treatment. See, *e.g.*, *Collins v. Sullivan*, 287 Ill. App. 3d 999, 1002 (1997) (not continuous where nearly nine years passed between treatment dates), and *Flynn v. Szwed*, 224 Ill. App. 3d 107, 115 (1991) (not continuous where a year-long course of treatment was followed by a 15-month gap, then two weeks of treatment, and another year-long gap).

¶ 33    Here, defendants treated plaintiff only three times: twice in early 2013 and once more in October 2017. This more than four-year gap, during which time plaintiff sought out and was treated by numerous other physicians outside the Northwestern network, prevents plaintiff from establishing a continuous course of negligent treatment. To hold otherwise would be to "nullify the purpose of section 13-212 and conflict with the legislature's goal of producing finality to the exposure of medical providers to suit." *Collins*, 287 Ill. App. 3d at 1002. Similarly, we reject plaintiff's contention that she was continually treated by defendants because she continued to follow the lifestyle recommendations of Dr. Goldstein after their last

visit in April 2013. Accepting such an argument would also render the legislature's goal of finality meaningless. Tellingly, plaintiff does not cite a single case in support of this position.

¶ 34 We also note that, even if we were to find a continuous course of treatment, we cannot say that it would be a continuous course of *negligent* treatment. The negligence alleged by plaintiff is defendants' failure to diagnosis her meningioma in 2013. However, misdiagnosis is a discrete instance of negligence, not a continuing act. *Jones*, 308 Ill. App. 3d at 498. Thus, the only negligent treatment occurred in 2013, more than four years prior to the filing of plaintiff's complaint.

¶ 35 To the extent plaintiff argues that defendants committed an additional act of negligence in 2017 by failing to adequately inform her of the meningioma, this argument is foreclosed by *Turner*, 294 Ill. App. 3d at 31-32, a case which bears a striking resemblance to the one at hand. There, in 1990, the defendant physician performed a Pap smear on a patient which showed a class four carcinoma in situ. *Id.* at 22. However, the defendant allegedly did not inform the patient of the results until 1993, when the patient returned to the defendant for a second opinion after being diagnosed with cervical cancer by a different physician. *Id.* at 23. Following the patient's death from the cancer in 1995, her estate sued the defendant for negligence. *Id.* In affirming the dismissal of the complaint based on the statute of repose, we rejected the estate's argument that there was a continuous course of negligent treatment ending in 1993. *Id.* at 30. Rather, we explained that "the scope of the 'ongoing course of continuous negligent medical treatment' doctrine has been construed to include only those acts or omissions that occur within the affirmative event of treatment." *Id.* at 31-32. Thus, we concluded that the doctrine did not apply because (1) "the alleged negligence occurred subsequent to the affirmative event of treatment" and (2) the failure to notify the patient about the Pap smear results did not qualify as "medical treatment" for purposes of the doctrine because the obligation to notify "require[d] only ordinary judgment—not medical judgment." *Id.* at 32.

¶ 36 Here, like in *Turner*, the alleged failure to notify in September 2017 occurred well after the affirmative act of alleged negligence in misinterpreting the original MRI in 2013. Additionally, any failure to notify was more akin to an administrative failure rather than an error in medical treatment. See *Ferrara v. Wall*, 323 Ill. App. 3d 751, 757 (2001) ("We agree with the *Turner* court's reasoning that the failure to notify a patient of abnormal test results, without any subsequent medical treatment, cannot constitute a continuing course of negligent medical treatment under *Cunningham*."). Accordingly, we find that the statute of repose began to run when defendants failed to diagnose the meningioma in 2013, as "[t]his omission was the act that was the cause of plaintiff's alleged injuries." *Id.*

¶ 37                                                    b. Fraudulent Concealment

¶ 38 Alternatively, plaintiff argues that the statute of repose did not begin to run in 2013 because defendants fraudulently concealed their negligence by failing to report their findings to plaintiff upon rereading the original MRI in 2017.

¶ 39 Section 13-215 of the Code provides an exception to the statute of repose whereby an action may be commenced at any time within five years after discovery of the injury if the defendant "fraudulently conceals the cause of action from the [plaintiff's] knowledge." 735 ILCS 5/13-215 (West 2018). "The concealment contemplated by section 13-215 must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Orlak*, 228 Ill. 2d at 18.

A plaintiff asserting fraudulent concealment must also plead and prove that she detrimentally relied on the defendant's knowingly false misrepresentations. *Id.* Fraudulent concealment may apply where a physician does not fulfill her duty to "fully disclose the negligence and its ramifications." *Cunningham*, 154 Ill. 2d at 407.

¶ 40     In this case, plaintiff acknowledges that Dr. Hebel, the head of Northwestern's radiology department, informed her of the meningioma in an October 2017 phone call. She also concedes that around that time she received an updated copy of Dr. Yu's original report, which now included an addendum noting the meningioma. Nonetheless, the crux of plaintiff's fraudulent concealment argument is that Dr. Goldstein and Dr. Yu had a duty to *personally* inform her of the results of the reread of the MRI and could not delegate that duty to other Northwestern representatives such as Dr. Hebel.

¶ 41     We find this contention meritless and agree with defendants that it is contrary to precedent and the operation of a modern healthcare provider. In support of her position, plaintiff cites two cases from foreign jurisdictions, neither of which stand for the proposition that a physician's duty to inform a patient of unfavorable test results is nondelegable. See *Betesh v. United States*, 400 F. Supp. 238, 243-44 (D.D.C. 1974) (not addressing delegation, but finding that a federal regulation requiring Selective Service System physicians to notify examinees of irregularities created a duty to inform under Maryland law); *Phillips v. Good Samaritan Hospital*, 416 N.E.2d 646, 648-50 (Ohio 1979) (finding a duty of care breached where the patient was not informed of unfavorable X-ray results at all, but noting that the form of the required disclosure varies with the facts and circumstances of each case). Nor is plaintiff aided by *Cunningham*, where our supreme court merely stated that a violation of a physician's duty to disclose her own negligence could constitute fraudulent concealment. 154 Ill. 2d at 407. Contrary to plaintiff's position, this court has explained that, while healthcare providers are indeed obligated to inform patients of unfavorable test results, "[i]f the provider is a physician, the physician can delegate this task or do it herself."[2] *Turner*, 294 Ill. App. 3d at 33. Moreover, such disclosure need not be in a face-to-face conversation but may be in a letter, phone call, or any other "correspondence that would indicate receipt." *Id.*

¶ 42     Here, plaintiff has not sufficiently pled fraudulent concealment because there was no concealment at all. The undisputed facts establish that, at plaintiff's request, defendants reread her 2013 MRI and promptly confirmed the presence of the meningioma, of which plaintiff was already aware. As Dr. Hebel informed plaintiff of the results and she continued to seek treatment elsewhere, there was simply no reason for Dr. Goldstein or Dr. Yu to personally contact plaintiff any further. Accordingly, plaintiff's untimely complaint was not saved by the doctrine of fraudulent concealment.

¶ 43                                    III. CONCLUSION

¶ 44     In sum, we conclude that the circuit court did not err in allowing defendants to withdraw their answers and file a motion to dismiss where plaintiff did not suffer any prejudice as a

---

[2]We note that in her brief on appeal, plaintiff quotes this paragraph of *Turner* but omits via ellipses the statement that the duty to disclose is delegable. We remind plaintiff's counsel, whom we note is also plaintiff's husband, that a lawyer must not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Ill. R. Prof'l Conduct (2010) R. 3.3(a)(2) (eff. Jan. 1, 2010).

result. Additionally, we find that plaintiff's cause of action was filed in violation of the applicable statute of repose, as her complaint was filed more than four years after the events allegedly giving rise to her injuries. The untimely complaint was not saved by either the continuous course of negligent treatment doctrine or fraudulent concealment. Thus, the circuit court properly dismissed the action, and we therefore affirmed the circuit court's judgment.

¶ 45        Affirmed.